May it please the Court, my name is Sarah McLaren and I am here today on behalf of Appellant David Hutchinson. The District Court's decision here significantly expands the liability of law enforcement leaders when their agencies respond to civil unrest. Specifically, this decision puts leaders participating in a unified command structure at risk of being found liable for any specific act committed by any subordinate of any agency during multi-agency operations. By expanding personal liability for supervisors, the District Court decision will serve as an unfortunate disincentive for law enforcement agencies to work together when responding to large chaotic events. More importantly, the District Court's decision ignores this Court's precedent and runs afoul of the well-settled principle that Section 1983 does not permit liability under respondeat superior. Here are the facts, when properly applied to the law, show that Sheriff Hutchinson is entitled to qualified immunity. Counsel, I thought they had dismissed all of their individual capacity claims. Oh, thank you, Your Honor, I'll start there. So those claims have not been dismissed because of they did not seek to do so until after the decision for summary judgment, so they are only permitted to do so by an order of the District Court. So what they have done is, right now there is a motion before the District Court regarding now the District Court cannot enter the order because this Court has jurisdiction, so it would have to do an indicative ruling, then it would come before this Court. So while they address, while they claim in a passing in a footnote in their brief that this case is moot, in fact, it is not moot. Well, and then they wrote us a letter, too, you're aware of? I'm pardon? You're aware of the 28J letter that they wrote us? Yes, Your Honor. Yes. Yes. Okay. But does this Court have authority to dismiss? Your Honor, I do not believe it does. I don't believe there is a motion before it to dismiss under and I would say the reason that under Rule 41, the dismissal can only happen by order of the Court. I do not believe this Court has direct authority to do so in the absence of a motion, which I have not seen. They brought a motion to dismiss earlier in this case that was denied. That was before they started to dismiss. You don't believe their letter can be treated as a motion when they make the flat statement they make, the flat statements they make in their letter? Well, and I, pardon me, Your Honor, I am, I don't believe I have seen this letter. So I am not. Counsel, it's the letter December 6, I'm pretty sure I'm referring to the right letter. Oh, that 28J letter. It's called 28J. It's a rule of this Court? Absolutely. No, that was before the motion to stay, Your Honor, which was denied, summarily. It was a 28J letter regarding their motion to stay? No. Okay. I get that, too, but I'm talking about the statements they make in there. Certainly. The statements they make in there, and we file a motion to dismiss with prejudice. We want to dismiss with prejudice. Understood, Your Honor. And if I can explain, I want to be clear what I think that letter did not make clear, and I did write a response to that letter. So now I have it. Oh, and I have it right here, too. Yes. Okay. And you say, you say, you imply that the only official capacity claims against Hutchison are left for trial. That's what your because sentence says. So now tell me, go ahead and make your sentence up. Absolutely, Your Honor. So what I intended to express in that letter, and I don't have it right in front of me, so I'll trust your recitation of it, but my intent to express to this Court was that until those claims were dismissed, everything remained by the district court, or the court issued an indicative ruling and the case was remanded, then all of these claims remained before this Court for a decision. And I think the important thing that they have consistently underplayed is that they are seeking specifically, we asked them to dismiss the official capacity claims and they denied. Right. So I think if you look at, and it's in their brief, seven of the nine plaintiffs, there is no underlying constitutional claim for an official capacity claim to proceed. However, should this Court dismiss sua sponte procedurally, which I'm not aware of a mechanism, but I don't know, inherent power, something like that. Lack of jurisdiction would be the normal reason if the case is moved. No, I agree, Your Honor. And I'm addressing their jurisdictional argument in my argument here today. But I'm just saying there is no dismissal on which to find lack of jurisdiction because the district court has not ruled on their motion. But if, and is that because the district court thinks it lacks jurisdiction while the appeal is pending? No, it has said it for hearing next month. The motion to dismiss. Yes, Your Honor. It was filed in December, is set for hearing. On June 6th. Yes. Yes, Your Honor. Is the defense objecting to the dismissal? Well, Your Honor, if the other side would agree that the seven claims with no underlying constitutional act. Well, yes, because they are seeking to go to trial on nine plaintiffs' claims, whereas the brief being put forth, there's no basis for at least seven of those. So we're in a very odd procedural position. I think that's pretty obvious. I don't know. I'm sorry, Your Honor. Go ahead. So what I would say is, too, even if the individual claims were dismissed, which they have not been, the case would not be moot because they would still be seeking to, their whole theory of official capacity liability is based on the That is their theory. It's the same theory as their supervisor's. They don't have to sue him to pursue that, do they? No, they do not, Your Honor. However, what I'm saying is those claims necessarily fail in that supervisor liability is an easier standard to meet than official capacity liability for a past pattern of bad acts, deliberate indifference, and here they can't even meet that. That's wrong. Well, there's not a motion before us to dismiss this appeal. No, Your Honor. And there was previously a motion which was denied, as was a motion to stay. We have a motion that references a desire to dismiss individual claims. Yes, and that motion is currently before the district court and will be heard next month. OK. Well, I have a question. If we get down to the qualified immunity thing. Yes. How do we know what facts the district court, what operative facts the district court was found or was even looking at here? I don't see that the district court opinion really tells us. It tells us what various parties contend or what witnesses contend, but it never gets around to describing the facts that it was accepting for purposes of its decision. I don't disagree with that, Your Honor. I would say the court then has an option if it wants to remand to the district court for further fact-finding, or we think what our position is on appeal. The court need not do that because the record is so clear that there is no basis to the not qualified immunity and that the official capacity mooting. Why do you say the record is so clear? Well, I think if you look at the record itself, not the district court decision. Well, why should we look at the record? All I meant to suggest was that the court has the option. In my reading of the case law, the court has options at that point. It can remand for further analysis by the district court, or it can forego with that and simply dispose of it on appeal. Obviously, our preference would be on appeal, but you're absolutely correct. The court is not required to do that. Well, if we assume that the judge was relying on all the facts in the declaration that was cited, even though she didn't lay them out, why would that not be sufficient to establish a violation? I want to make sure I'm understanding the court's question. Are you saying, because you said, I just got confused at the beginning where you assumed the court was wrong on all the facts. But relying. Oh, okay.  And I misheard. Relying on the declaration of the mayor. Yeah. Okay. No, I. Thank you. Even though the judge didn't lay out everything that was in that declaration, if we assume the judge was assuming those facts to be true since the judge referred to it. Yes. Would that be enough to create a genuine issue of fact? Sure. So addressing, because I think that is the crux of their case here, which is the declaration of former Mayor Elliott. First of all, it will not help seven of the nine individual plaintiffs. Because only two of the plaintiffs are really. What about Evans and Tweed? Exactly. So focusing on Evans and Tweed, but I think everyone got Tweed correct. Everyone got lumped together at the district court. So I'm trying to focus on them here. The reason it is insufficient is because if you look at the content of the mayor's declaration, I say you can put it into two buckets. One, he is talking about the Brooklyn Center resolution that was passed prohibiting all use of, I believe they termed it tear gas, rubber bullets, kettling, mass arrests, and some other things that just aren't relevant to the issues here before us. Those were blanket statement, black and white, legal pronouncements, setting a higher legal standard than that required by the U.S. Constitution. Because it is well established throughout the circuit that under the totality of the circumstances, all of those things can be constitutional. So as a matter of fact, and we have this in our briefing, Sheriff Hutchinson and the county were never bound by that resolution because we have original law enforcement jurisdiction throughout the county. So the resolution speaks for itself. Mayor Elliott's reasons for doing the resolution, the existence of the resolution cannot put Sheriff Hutchinson on notice of a past pattern of specific violations because something legal is being outlawed. That doesn't give him notice that something unlawful has happened. He also makes vague statements about providing notice to Sheriff Hutchinson about, he just calls them constant abuses or nightly abuses of the press and protesters. Your Honor, these statements especially made by someone who has just admittedly outlawed several legal things, they're not sufficient to put Sheriff Hutchinson on notice of a very similar constitutional violations. The only specific type of act that Mayor, excuse me, that Mayor Elliott describes is the deployment of 40-millimeter, he believes, unnecessary deployment of 40-millimeter rounds. That's not even at issue here. Neither Mr. Tewitt or Mr. Evans allege they suffered that kind of injury. And finally, I would just ask the Court to look at, I believe, the well-reasoned opinion in the Senn's decision where at Rule 12, the district court looked at the same declaration and found it insufficient for supervisory liability and official capacity claims even at the Rule 12 stage. We think even more it is insufficient at the summary judgment stage. And unless the Court has further questions, I'd like to reserve the rest of my time for rebuttal. You may. Thank you. Thank you. Mr. Martin, we'll hear from you. Thank you, Your Honor. May it please the Court, James Martin for the apologies. Let me start with the jurisdictional issue first, if I can. We do have a pending motion for an indicative ruling that would directly affect, we believe, the jurisdiction of this Court if it's granted, as it not only relates to mootness, but to the pendant jurisdiction argument that is made that extends to the official capacity claims. As far as the Court's ability to examine its jurisdiction, we obviously can you, if we haven't read the motion again recently, remind me, you're moving to dismiss all the claims against the defendants in their individual capacity? Yes. You, so you want, you're doing that so you can proceed only on municipal liability? That's correct.  That would be our argument, Your Honor, yes, if the Court accepts it. The, there are other reasons, of course, that we have argued that the Court doesn't have jurisdiction, which it can examine in the context of the collateral order appeal itself of the individual capacity issue, and why there is no pendant jurisdiction to get to official capacity anyway. Those are the problems with Hutchinson not being the sheriff. Well, even if we consider that Hutchinson, well, that means he doesn't have any exposure on the official capacity claim, and it also, but if we. I thought you said that he's not the correct appellant. Right. He would be a municipal liability. Yes. He would be. Wasn't that one of your points? That was one of the points, Your Honor, one of several, as I was indicating. As to Hutchinson, he would certainly be a fact witness in the official capacity claim, but he would have no legal exposure on it. And if we assume still that the official capacity claim is before the Court, there are at least three reasons that it doesn't have jurisdiction over that claim anyway, even if we substituted the correct sheriff in there. The first is that this record is replete with genuine disputes of fact on the critical liability issues, and the Court has consistently made it clear in its own opinions that that defeats its jurisdiction. The second issue is that as to pendant jurisdiction over the official capacity claim, there is no dispositive constitutional violation here that takes care of the official capacity claim. And in fact, the proof on the official capacity claim will be independent, particularly as it relates to the failure to train. The dispositive case for the sheriff on individual capacity will not take that claim out. And this Court has said, again, many times, that the elements are different, and where the proof is different, Venkalese being an example, there is no pendant jurisdiction. The third reason I would offer is that the Court has also made it clear that if there is a clearly established constitutional right in the case, which here there clearly is under the First and Fourth Amendments, then what happens after that are evidentiary issues. And that brings us back full circle to the fact that those evidentiary issues can't confer jurisdiction. So there are independent bases for a lack of jurisdiction here, as reflected in our motion, the briefing, and this Court's own dispositive decisions. Roberts. Are you familiar with this Court's decision in Dundon last fall? Yes. Okay. I don't think it was briefed here by either side. I could be wrong. I think Dundon was part of the briefing, Your Honor. And I apologize. It was briefed at length. I am familiar with it. Okay, good. But my point would be, why does that say it may not even be clearly established? Oh, the constitutional right. Yes. Right. So in point of fact, Your Honor, here, there is nothing obscure about the constitutional rights at stake if we have the proper focus. Dundon was protests, indiscriminate protests, no discrete media issues, and police responses to that. This involves lawful activity by the press with no issue of being intermingled with a protest, but, in fact, separately engaged in lawful news gathering activity. And in that setting, I think the cases to point to are this Court's opinions in, for example, the Burridge case or perhaps the Falk case, even in the Bernini case, where the press law-gathering rights are protected by the First Amendment, and when they are engaged in lawful reporting and not part of a mass protest or threatening law enforcement, there are First and Fourth Amendment protections for that. And, in fact, all the cases that are cited, SENS included, recognize that. None of them suggest that right isn't clearly established. The flip side would be, Your Honor, that there's nothing obscure about this. As I said, it's reported in the cases and well understood. But what's the evidence that Hutchinson violated? He wasn't on the scene, as I understand it. That's correct, Your Honor, but in order to have supervisory liability under 1983, he doesn't have to be on the scene. What's the evidence that he would be liable on that supervisory theory? The judge only cited this Elliott declaration, but she didn't even — the only parts of it she cited were that he was supposedly on notice of a pattern of unconstitutional acts, and he worked to change certain policies. So, Your Honor, if I may, I don't think — That's enough? Let me say two things on that. The first is that I think this Court's prerogative in reviewing the summary judgment in trying to determine whether there will be material disputes of fact, it should consider the whole record. Just as we should infer that the district court judge was doing, the fact that she mentioned specific pieces of evidence does not mean that her ruling was exclusive to that. Well, usually the judge cites the best evidence. Is there something she didn't cite that you think is better than what she did cite? Well, I think I could in about one minute outline some things that are in the record that would support what she cited, and then I would conclude after that, Your Honor, to say that what she did cite was sufficient. So the record is, in fact, much more robust than the order indicates. It has video press conferences of what was going on. It has, of course, the items that are mentioned in the order, including the Brooklyn City Council resolution, the Schnell letter. Beyond that, there are e-mails on the media responses that were being made to the demonstrations. There are journalist declarations, including from Mr. Tweet and Mr. Evans, but beyond that, other reporters, Stegnana and Kana specifically, that demonstrate what was going on and, in fact, that HCSO deputies were involved, something that the record reflects and even the opponent's briefing admits. Then we have Mayor Elliott's extraordinary declaration, but importantly, beyond that, we have the history of the two TROs that were entered and what they reflect. And we know, as a matter of fact, that the TROs were directed to the State and its agents. The TROs were publicized to the HCSO. They were publicized to the sheriff. And so the notion that there was no notice of what was going on in the streets during these protests that the sheriff was monitoring in real time at the end of the day is not credible. This is the context, Your Honor, to come full circle, in which the conversation with Mayor Elliott takes place. Mayor Elliott had brought in the HCSO deputies. He had designated the sheriff to take charge of this. And so when, on April 12, the transgressions came against the press and the press was being singled out as a result of these dispersal orders, Mayor Elliott went public with the problem. He took it to the Brooklyn City Council. He took it to the press. And following that, what happened? The conduct didn't change. In fact, the sheriff told him, if you keep up this press attack about what my people are doing, I'm going to pull them out. So on April 15, the law enforcement took the suggestion of the mayor to withdraw the deputies from the front lines. And at that point, the demonstrations occurred, but the violence against the press and the protesters faded. What happened after that, though, was on April 16, the sheriff rescinded that and said, we're going back to mass arrests. We're going back to dispersal orders that include the press. And the problem continued. And that brings me to the TRO. Why would that be unconstitutional to have dispersal orders that include the press? So the dispersal orders were directed, well, let me say one, two things on that. First, dispersal orders that include the press where the press are engaged in lawful news gathering work, they are clearly identified as press and they are at the scenes of protests documenting what happens in the protests. They should not be subject to dispersal orders and the mayor's dispersal orders should have said that. Then we learned that as a matter of constitutional fact at the TRO because the TRO entered on April 16, said no more dispersal orders that affect the press in lawful news gathering activities. Don't do it. That was issued to the state troopers and their agents. The state troopers were directed to publicize it to all law enforcement. They took the TRO back and what happened next? The HTSO sheriffs, deputies, excuse me, and sheriff went right back to what they had been doing before. The dispersal orders were indiscriminate. There was nothing specific as to the media engaged in lawful news gathering activity and further to that, Your Honors, the conduct continued. The orders were given from the unified command, dispersal indiscriminately. They went right back after the press and in the TRO, the trial judge here, the one who had more salient thing to say, she said, because this happened again and the directives weren't being heeded, this suggests a coordinated plan to target the press in effect. And that is at least, Your Honors, on this record, a disputed issue of fact. And as I said, the notion that the unified commander who was in the middle of this and on notice that these abuses were taking place, including harassment, assault, et cetera, given the intercession of the mayor with this extraordinary declaration, talking to him face to face, telling him what's happening, we know what they were talking about. It was about the involvement of his deputies and his team in addition to the other people. There's no other explanation for it. And he watched as the change occurred and the unconstitutional behavior continued, notwithstanding their discussion. So, Your Honor, full circle, the L.A. Declaration at least gives rise to a triable issue of fact on notice, on deliberate indifference, on authorization, on the key elements that relate to supervisorial liability. The TRO, which is also mentioned, also substantiates that. And as I said, the rest of a very robust record does as well. At the very least, there is a genuine issue of fact for trial here. And under those circumstances, summary judgment was properly denied. And if this went back for further fact-finding, this Court would learn exactly what I just said, that between the front-end run-up, starting with the Floyd protests to the end of the line here, there was awareness on all parts that the press needed to be protected. Exactly the opposite happened. And this brings me full circle to where counsel started. If this Court doesn't find issues of fact on this record as it relates to the sheriff and the HCO, if it gets to the merits at all, then we are not in a place we want to be. This was, in effect, unconstitutional violations directed at members of the press who were singled out. That's an issue that should be tried, and this Court, if we get to the merit, should affirm for that reason. May I ask a question? Please. Counsel, I just want to make sure I understand where we are on this. In your brief, you asked that the district court be affirmed. Yes. But there's a motion pending in the district court to dismiss individual claims. Yes. And you folks are going to show up on June the 6th, presumably, and the district court is going to rule on that, I guess? Presumably, if it . . . Okay, let's say . . . Let's say that it does. Let's say the court dismisses, grants the motion. Right. Gives it . . . What do we do then? Well, under the rule, we will advise you of that ruling. We're directed to under 62.1, at which point this Court presumably can add that to its calculus on what it wants to do with the appeal. What would the calculus be? I'm asking you what you want us to do at that point. At that point, I think the appeal should be dismissed for lack of jurisdiction, Your Honor. I think there are a variety of reasons you can do that without that indicative ruling, but even when that, I think the case becomes stronger. Thank you. You think the district court lacks jurisdiction to dismiss those claims? It can only give an indicative ruling? We've argued that the court has jurisdiction to entertain the dismissal. That's been disputed. And so the indicative ruling is, I think, properly made in the alternative. The alternative. Yeah. And the defendants are resisting your dismissal because they want to condition it on your dismissing other things? Is that what you're saying? I'm not privy to all the negotiations that went on, but as to this . . . I'm asking what they have in response. Okay. They, first of all, oppose the motion, that the court can't hear the dismissal piece of it, and second, that there's no need for an indicative ruling, and third, they're arguing that this court retains jurisdiction and should decide the case. They want a ruling, apparently, from the court of . . . despite the fact that the motion's pending. All right. Well, you'll notify us promptly if the district court rules, correct? Whatever ruling is made, absolutely, Your Honor. Thank you. We'll hear rebuttal. Thank you, Your Honor. I want to clarify Chair Fetchinson's position on the pending motion to dismiss at the district court and the discussions that led up to it. The reason we oppose the motion is because, as I think I heard them admit, the purpose of the motion is to forego, from the plaintiff's perspective, is to forego this appeal and go straight to trial on all of their official capacity claims. Well, what's wrong with that? They didn't have to sue the individuals at all to bring official capacity claims. They're just trying to keep us involved by resisting their voluntary dismissal, as I understand it. Is that unfair? Well, Your Honor, I — what I believe is unfair is that they are seeking a trial on claims for which they have no basis, specifically . . . You could file a motion for summary judgment. But, Your Honor, I did. I don't know that the court — that the district court is going to hear a second one. Well, so . . . And so we were entitled to review of that. Sometimes you have to proceed because there's no interlocutory appeal available. Absolutely, Your Honor. Absolutely. However, I do think that there is also value in not having this broad of an order stand at the district court. And so it is not just about this one situation, but it is. It is being — this order is being read by other agencies as a disincentive for unified command. And we know, even in the evidence they have submitted themselves, I don't know why they think unified command is some sort of nefarious thing. Because in their own evidence, it says that this cuts down on people working at cross-purposes. This helps keep people safe in the, unfortunately, very violent and dangerous situations that we have seen in Minnesota over the past several years. Thankfully, not very recently, but we know those could recur in the future. So I do want to address, of course, if they were willing to dismiss the official capacity claims, we would have no objection. That was the discussion before and why we are resisting. That's the only reason this appeal is here, right? Well, I — It's the qualified immunity ruling on individual capacity claims. Yes, Your Honor. However, I do want to say that is the same theory underlying their official capacity claims. So the two do rise and fall together legally. You're trying to use the individual qualified immunity appeal to knock out the official capacity claims on the theory of pendant appellate jurisdiction. Well, Your Honor, that was not our intent when we filed the appeal because they never offered to — until they lost the motion to dismiss here, they never offered — I thought you were asking us also to take up the official capacity. No, we are. We are. But to clarify my comment, Your Honor, what I meant was when I — when we sued out this appeal, brought this appeal, filed the notice of appeal, they had — they had never offered to dismiss the official capacity claims. Well, I understand. I understand. Yes. Well, that was the point I was making. I'm not saying it was improper. I'm just saying that your objective in this appeal is to challenge the ruling on individual capacity qualified immunity and then to use that jurisdictional avenue to bring in the official capacity claims as well, which you couldn't normally appeal. No. But it — but there is a, you know, a line of case law, which I know the court is familiar with, in which courts have chosen to do that. And at a minimum, I think there is value in cutting back on this overbroad district court ruling. I see that my time has expired, and I'd ask the Court to reverse.